Case number 23-18-57 Tenika Parker et al. v. Tenneco Inc. et al. Arguments not to be received. 15 minutes per side. Mr. Wozniak, you may proceed for the appellant. Thank you. May it please the court, my name is Todd Wozniak and together with my colleague, Monica Perkowski, we represent the defendant's appellants in this case. I'd like to reserve three minutes for rebuttal argument. Before I begin my argument, I feel compelled to bring to the court's attention that there was a Second Circuit decision issued yesterday in Sedano et al. v. Ardent Trust Company et al. And that was a split decision and that court addressed an arbitration provision identical to the one at issue in the Third, Seventh, and Tenth Circuits that I believe we're going to talk about today, which are the Henry, Smith, and Harrison cases. And in that case, the Second Circuit majority of the panel affirmed a trial court's denial of a motion to compel individual arbitration. Again, that clause was identical to the ones at issue in the Third, Seventh, and Tenth Circuits and is different from the arbitration clause at issue in this case. I think one of the things that's interesting about that opinion is there's a dissent, but basically it's the first time a judicial officer, that I remember anyway, has spoken about what the contrary argument is. So I was wondering when I saw that late last night, whether you thought it made any sense to get short supplemental briefing on the import of the majority and the dissenting opinion in that Second Circuit case? I think it would be helpful, Your Honor, because you're absolutely right. I think it is the first time we've seen a dissent that addresses head-on some of the issues that we're going to talk about today. And in particular, one of the key issues is what does LaRue, the Supreme Court's decision on LaRue, actually say? I've always understood, and I think the majority of courts have understood it, to say a plan participant in a defined contribution plan has the option to bring an individual claim in federal court for individual monetary relief plus whatever equitable or injunctive relief is appropriate. If that's the case, then the effective vindication doctrine should compare the remedies available in federal court in an individual LaRue-style lawsuit to the remedies available in arbitration. And I would suggest to you if you do that here, the Arbitration Clause allows the exact same remedies in arbitration as would be available in that individual-style LaRue-type individual action. Now, the plaintiffs and the Department of Labor argue here that there is no such option under LaRue. Instead, what they argue is LaRue stands for the proposition. LaRue, together with Russell, stands for the proposition that a plaintiff bringing a Section 502A2 claim must pursue plan-wide and class-wide remedies on behalf of all of the participants in all of their accounts. And their argument is that that is unwaivable and it is mandatory. And because it's unwaivable and mandatory, when you compare the remedies available in federal court to the remedies available in arbitration, they're obviously different because the Arbitration Clause prohibits class-wide or group-type actions. And so that's where the dichotomy comes, and I do think it's important that this panel is going to have to wrestle with that issue of what does LaRue actually say? Does it still require a participant to pursue Section 502A2 claims on behalf of the entire plan, or is it okay to bring an individual-type action? Well, that's a perfect segue into the other question I wanted to ask, and I'll ask the other side as well. I find this issue about what does LaRue mean, because you both read it and you come to diametrically opposing views as to what LaRue stands for. And this whole idea about whether this effective vindication exception to the FAA even exists, given the Supreme Court's never passed on that particular point. I'm just curious whether we, this is sort of a two-part question, part of it is, do we avoid having to wrestle with that difficult question? Or should we seek a way to avoid it by having the district court address the question of whether the plan was properly amended? So in other words, it's kind of like a constitutional avoidance doctrine, although that's not at play here. Should we be pursuing the question about the amendment of the plan, in part, to duck the more difficult questions about the effective vindication exception? I don't think it's going to change it. I think we will be back before you in probably six months raising the same issue. You're not going to be back if you lose on the question of whether you amended the plan. Fair enough, but I do think we've put in front of this. Because it's hard to look at what you did to see how what you did possibly comes within the delegation of authority. Well, no, the amendment of the plan is a plan sponsor function, and plan sponsor authority was delegated to the committee. And so it does seem to me that that committee had the ability and the right to amend the plan, as any plan sponsor would be able to do. And adding an arbitration clause or a venue clause or any other type of clause like that, this court and other decisions have said, those are perfectly appropriate decisions of a plan sponsor. So I do think that we will end up back in front of you. And it does seem like that is an unnecessary way station for us to come back. Thank you. So getting back to this LaRue issue, though, if you take the position, as the plaintiffs and the Department of Labor are trying to take, that these type of actions must be brought on a plan-wide or class-wide basis, it raises serious due process issues. And there's a reason why Rule 23 and these other procedural mechanisms exist. Help me understand how you're articulating that. It seems to me that much of the discussion is related to the fact that the plan itself is to be the recipient. But it is not an individual's claim that's being made for personal reasons. It is a claim that money that is owned by the plan and any cause of action brought means that that funding, it goes back to the plan itself as opposed to the individual. And so what we simply have is an individual with a stake. They have standing. They have their own defined contribution plan. But they are acting representatively because that's what ERISA is all about. It's about the right of money held in trust. So I would agree that they're acting representatively in the sense that the remedy will go to the plan. But the remedy will end up in an individual plan account that will ultimately go to the individual. I mean, it's the retirement benefit. You have every individual account, right? Well, if you believe that... No, it doesn't go to every individual. No, this is the distinction between a defined benefit and a defined contribution. Correct. So it would go to those plaintiffs who have a claim, right? And so if you believe an individual can bring this claim, then it would be going to that individual's account only. Well, it would be going to every account for which the fiduciary violation had an impact, right? But you won't even know that until you litigate. So take this plan, for example. There's two plans before they were merged. There's almost 20,000 participants. The investment options have changed over time. The plans have merged. The investment committee has changed over time. The investment advisors have changed over time. The investment lineup has changed over time. Participants come in and out of the plan all the time. We won't even know who has such a claim until you litigate through to the merits. But when you provide a bundle of money, so to speak, to correct a fiduciary breach, then it's the job of the plan to disperse it to those defined contribution accounts that were impacted, right? I think perhaps the distinction is that ERISA governs what some people have referred to as the holding of other people's money. A fiduciary in an ERISA plan does not hold that fiduciary's money. He is a representative holding all of the pension plans, defined benefit payments, and defined contribution plans. So when there is a wrong, isn't it correct to say that the wrong is to the plan itself? And isn't that the goal of imposing what is simply trust equitable remedies in the context of ERISA's statutory provisions? So what I'd suggest to you is the harm would be imposed upon individual plan accounts. And different individuals may not have any harm. Some individuals may have some slight harm. Some may have the most harm. Again, this is where some due process issues come into play. This is not a, so go back to the Viking River decision where you're talking about agent principle type concepts. Here, there is no agent. The beneficiary or the participant owes no duties to anyone. They can litigate the case as they deem fit. They can settle the case and throw some participants under the bus in order to make more money for other participants in a settlement. This is not a plan fiduciary like the trustee asserting a claim on behalf of the plan. That might be a very different animal. Here, you have individual beneficiaries who have their own self-interests and can pursue the claims as they deem fit and do not owe any duties to any other participants. But isn't that the conceptual problem that does not cohere with the requirements and expectation of the statutory provisions of ERISA? Because the fiduciaries in an ERISA plan hold the entirety of their plan. And the entirety of that plan makes them owe duties to everyone who is in the plan. And when you have that sort of duty structure, it satisfies the trustee provisions, the fiduciary provisions of ERISA. Because then one individual doesn't get to say, I have the wherewithal to challenge about my defined contribution plan. And the rest of you who may have the same problem, I guess you better go out and hire an attorney. ERISA says, no, you are protecting all of the plan assets. And a fiduciary breach as to self-dealing, for example, it has to be assuaged with the entire basis of the funding in order to equally treat all of the individuals whose money you are holding as a fiduciary. So again, I think there's a distinction you have to draw between a trustee and a participant. If a trustee was the plaintiff, I think we would be having a very different discussion than if it was a participant. Isn't that the whole issue under LaRue? Does LaRue require that you essentially bring every claim in a representative or class form, even though ERISA doesn't say anything about that? In other words, you can't bring, according to the participant's argument, you can't bring an individual claim. Now, we know it gets complicated because you're technically suing on behalf of the plan. But it would say, when you sue on behalf of the plan, you have to get plan-wide relief. You can't seek individual relief. And that just comes down to what LaRue means. Am I right about that? I think they're wrong about that's what LaRue means. I think LaRue stands for the proposition and says... I understand that, but that's the issue, isn't it? It is the issue. I agree. Yes. I guess I have a follow-up question because I understand the issue to be what is entrusted to the fiduciaries. And under your argument, one individual defined contribution plan could come in and establish that one of the trustees sitting on the fund has engaged in self-dealing and seek for their defined contribution plan to be made whole. And then under your analysis, the remainder of the defined contributions, let's say 50% of the defined contribution plans contain the same investment that was subject to the same fiduciary breach. Then it's not representative and the fiduciary does not have to do anything for those defined contribution accounts. I think that would then be an additional fiduciary violation. So each participant can bring a claim for the monetary relief to their account. There's nothing unusual about individual actions. That's what class action waivers are about. Whether or not the fiduciary would have an obligation to address something because of a ruling in an arbitration, it may very well be that the fiduciary would feel an obligation to address something. But that's a different issue. That has to do with the fiduciary and the fiduciary's duties to the plan. And whether the fiduciary believed that that ruling did indicate there's something that needs to be corrected. And if that's the case, then it would be up to the fiduciary to make that decision. And... I dumped his time up, so let's try to bring this to a close. Last question. Sorry, go ahead. And it is, in your estimation, it would be only up to that breaching fiduciary because your procedure requires the person who holds the defined contribution account to remain silent, right? No, Your Honor. It's a confidentiality provision, is there not? No, Your Honor. There are multiple fiduciaries for any plan. You have investment managers, investment committees, plan administrators. This is not like one person holding the money can do whatever they want. You have multiple people who all have fiduciary duties. But the person who got the money in the defined account cannot talk about it, right? No, I don't think that's right. There is a confidentiality provision and a clawback provision in this arbitration. There is a confidentiality provision, as is the case in most arbitrations. I'm not sure what you mean by clawback. Isn't it implicit in this whole question that this multitude of fiduciaries are all going to ignore what the decision was in an individual's claim and go on continuing to breach their fiduciary responsibilities? It just seems fanciful to me. I agree. It is. You have professional money managers who have reputations at stake. They have their businesses at stake. You have other individuals who are sitting on plan administrative committees. The assumption that these dozens or so people are all going to be ignoring what the ruling is and all be breaching their own fiduciary duties seems fanciful to me. Okay. Thank you, Your Honor. Good morning, Your Honors. Scott Nurbis on behalf of FLEs, and I've reserved five minutes of my time for the Department of Labor. Okay. Do you think it would be helpful to get a short supplemental briefing on the impact of the majority and the dissent in Sedena on our case? Given the timing of Sedena, I certainly have no objection to that. If the court would find it appropriate, we are certainly willing to do that. As of the Second Circuit's decision yesterday, as of that there are now four circuits that agree with Appleby's position. The Tenth Circuit in Harrison, Seventh in Smith, the Third in Henry, and now the Second in Sedena. And they have all squarely addressed the issue before you and agreed with Appleby's and the Department's position that this arbitration provision purporting to take away my client's statutory rights to bring representative capacity plan-wide claims for relief under ERISA is not valid and not enforceable. There are a lot of cases, are there not, that say even in the ERISA context that a plan can waive representative and class action claims? So in terms of waiving a class action or agreeing to arbitration, that's not the issue. The issue, the precise one. Let me frame the issue. Am I right that the cases say that a plan can waive class action claims? Just in general terms. Yes, class action, yes. And the reason you're saying that that's not the issue here is because the effective vindication exception to the Federal Arbitration Act then supersedes the Federal Arbitration Act and renders this unenforceable. Right? That's right. The structure, the statutory mechanism for relief. All I'm trying to, I'm not trying to trap you here. Just trying to get to the ultimate question was if the effective vindication doctrine does not exist, then do you have a claim? Or is your claim basically primarily based upon the existence and application of the effective vindication exception? Your Honor, I would broaden it. You don't get to broaden it until you answer my question. Oh, I'm sorry. Well, I believe it is predicated on the effective vindication doctrine. But I think it's also predicated on this court's own decision in Morrison, which says, look, what a statute giveth, an arbitration provision, or a waiver in one, cannot taketh away. Now, that's different than the effective vindication exception? I believe it's both sides of the same coin. They're related. I just think it's a broader concept. Okay. But it is part of the effective vindication doctrine, certainly, and adopted as part of the Italian Clause. That's all I wanted to know. Thank you. My point is, of course, ERISA is a unique statute. It has, as this court has recognized in Hawkins, a unique statutory mechanism for the seeking of relief, and it includes plan-wide relief. 409 could not be more clear. As Justice Thomas says in his concurrence in LaRue, five times it references the plan, and it could not be clearer that whatever relief is acquired, pursuant to ERISA, is plan-wide relief, and for the plan, and belongs to the plan. The court has said that clearly in its decision in Hawkins, and all we're asking for here is for this court to logically follow a logical extension of what it has already ruled in Hawkins, that these claims belong to the plan. And because ERISA, as the court said, has this unique statutory mechanism, and it has it for the very reasons that Judge Stranch was articulating, that relief to be sought is to be sought on behalf of the plan, and is plan-wide in nature. And that relief, then, is by its very nature inherently and necessarily a representative capacity claim. And my friend on the other side would have you abandon... So essentially you're saying, for the reasons that you've just expressed, that an individual in a defined contribution claim context cannot bring an individual claim. They have to bring a representative claim. Yes, in the sense that it may be, as it was in LaRue, that the harm is isolated to only a single individual participant's account. But even as LaRue clearly says, even when it is that individual bringing a claim that impacts only that single individual's account, the relief under ERISA 409 that is sought is plan-wide relief. One follow-up question. Excuse me for interrupting you again. What would be the basis for interpreting ERISA in such a way not to look at whether the text permits plan-wide relief? I don't think anybody would argue about that. But whether it also restricts an individual plan participant from filing only what turns out to be an individual action. That's a different question than what's presented here, obviously. We seek plan-wide relief. And I think it's an important distinction. Because ERISA permits, as your Honor has so said, a plan-wide relief, an arbitration provision that includes a waiver of any representative action or any representative claim takes away what ERISA giveth. But that's the effective vindication doctrine. So if we put it off to the side, if that exists, seems to apply here, you win. I get that. But I'm trying to figure out what the text means. The text doesn't say anything about the effective vindication doctrine. It's not grounded in the text from what I can see. So what would be the purpose textually of not whether you can bring plan-wide relief, I think you can, but whether you're required to bring plan-wide relief. Where do you get that? The claim under ERISA in Section 409 is specific. It says that language couldn't be more clear. It's to make to such plan any losses to the plan and to restore to such plan. Does that also have to do with the practicality of how an ERISA fund is managed? Because the trustees or fiduciaries are appointed for the purpose of holding other people's money in toto, an award in a claim brought goes to the plan itself. And it goes to the plan itself, doesn't it? Because part of the fiduciary duties of the fiduciaries of a plan is to correctly distribute the money among the defined contribution plans that exist within their entire fund. And they cannot, as a fiduciary, give to one who suffers a breach and not give to the other individuals in that plan who suffered the exact same breach. Is that not the practicality of how they function? Yes, Your Honor. That is exactly the practicality of it and I believe that's what Russell recognized and that that is, as the court looked at the full context of ERISA, what ERISA was trying to accomplish and why it empowered an individual participant to bring plan-wide relief. 50282 makes it clear. A participant, not just the fiduciary, not just the trustee, but a participant can bring under 409 plan-wide relief and again, what ERISA giveth, you cannot taketh away in a waiver. The law could not be more clear in that regard. And that's what defendants have purported to do here. I believe Your Honor makes a very, Judge Strange makes a very astute observation regarding the confidentiality provision in this arbitration clause too. That if it was to be enforced and we had some individual who was required to confidentially arbitrate, presumably maybe even settle their claim, and then at the risk of if I disclose that I've done this, my money will be clawed back. It's never going to get out to the rest of the participants that, for example, in our case, for over the last six years, these fiduciaries have been asleep at the wheel and causing all of these people that have their hard-earned retirement money in this plan to be losing millions of dollars. Nobody else will find out about it. We can keep it under seal. That assumes, does it not, that the fiduciaries are going to ignore this adverse decision with respect to an individual claimant? No, Your Honor, I think you're, with all due respect, missing the point of what about the last six years when all of this money has been lost? That, among the plan-wide relief that is allowed, of course, is the restoration to the plan. But the loss is caused by these fiduciary breaches. Let's say we have a fiduciary who at least responsibly sees, whoops, I've been asleep at the wheel for the last six years. Okay, I'm going to correct my action and benefit all the plan participants moving forward. Well, that's just a small part of the, that's an important one, but it's only one concern. What about the last six years? What about that? All right. We'll hear from counsel for the Secretary of Labor. Is that right? Yes, ma'am. Okay. Thank you, ma'am. May it please the Court, my name is Sarah Kirchius, and I represent the Secretary of Labor as amicus in support of plaintiffs at the lease. Dependents openly admit that plaintiffs in an ERISA-covered plan have the right in court to bring a 502-H2 action on behalf of the plan seeking all plan losses. But the representative action waiver cuts off exactly those rights and remedies that these participants have under ERISA. As now four circuit courts have held, when an arbitration provision cuts off the right to seek the very remedies that ERISA authorizes, that is an unenforceable prospective waiver of participants' statutory rights and remedies. These three court decisions, not four court decisions, defendants contend that these decisions are distinguishable on one factual difference, that in these four decisions, injunctive relief, plan-wide injunctive relief, was also prohibited. But the problem with that is in the Second Circuit, the Third Circuit, and the Tenth Circuit, all three of those circuit courts found that the prohibition of seeking plan-wide monetary remedies itself was a violation of the effective indication doctrine. So therefore, deciding in favor of defendants would absolutely create a circuit split with at least the Tenth, Second, and Third Circuits. Defendants have basically two paths for victory in this circumstance. First, they could succeed in showing that the representative action waiver is a permissible limitation because there just simply is no right under ERISA for a single participant to seek plan-wide relief under 50282. But not only is that foreclosed under LaRue, but it also goes against defendants' own admission that participants can seek this plan-wide relief in court, which is in the reply brief at page 11. Second, they can still succeed in showing that, yes, okay, they have the right to pursue this plan-wide relief in court, but it's a procedural right, and therefore can be waived under the effective indication doctrine. However, we already know this isn't true under both Viking River and because both LaRue and this court in Hawkins have told us that this is not a claim joinder. It's a representative action, and that's the only thing this claim can be. Jumping into addressing some of defendants' points that were brought up, first I'd like to talk just a little bit about LaRue and what LaRue actually did hold. So in context, LaRue was coming after the Supreme Court's decision in Russell, which was a defined benefit plan. The court in that case found that because of the nature of the defined benefit plan, the benefits were the same for all participants, and unless something affected basically the entire plan, the entire plan was about to default, it wouldn't affect the benefits participants received. Therefore, the injury in that case, one participant having a delay in receiving some benefits, was not a plan injury, and therefore because 502A2 only addresses plan injuries, they could not bring that claim. LaRue situates itself by saying this is a defined contribution plan. Therefore, an injury doesn't need to affect the entire plan and put it at the brink of default in order for it to be a plan injury because all of the separate accounts of these participants, they're all parts of the whole, which are the plan's assets. So even if an injury hurts one account, it's hurting the plan. So far from saying you could bring an individual claim for individual remedies, what LaRue said was you don't need to have an injury that affects every single person because one person's injury in their individual account is a plan injury. The Supreme Court makes that abundantly clear when it says that 502A2 does not provide remedies for individual injuries. The other point I'd like to make in response to a point defendant makes is the difference between a plan fiduciary bringing a 502A2 claim and a participant bringing a 502A2 claim. If you look at 502A2, it lists four groups of entities that can bring these claims, participants, beneficiaries, fiduciaries, and the secretary. All four groups have exactly the same right to bring this representative claim. So it's not a different analysis if a plan fiduciary is bringing this claim. It's the exact same analysis because they each have the individual right to do so. And I think the last point I would make is that I think Hawkins really is instructive here by telling us that this is a representative claim. We could talk all day about whether or not we think it should or shouldn't be representative, but the Sixth Circuit already held that it is, and that precedent is binding along with the Supreme Court precedent in Viking River and LaRue. Thank you, Your Honors. Rebuttal. Let me just address a couple of the comments made by the secretary's solicitor. To go back to the question I think Judge McKeague posed, whether this is mandatory or permissive is an important issue. Nobody is debating whether or not a participant can seek to represent others. Of course you can. That's what Rule 23 is all about. The question, though, that is a waivable right. That is a procedural right. The question is, is there a substantive, unwaivable right, a mandatory obligation to represent the entire plan and the absent participants and their accounts? And that, we suggest to you, is not what either LaRue or the majority of the courts have addressed that issue have said. In fact, the majority of courts have addressed this issue when these claims were brought in federal court without the plaintiff trying to use a Rule 23 mechanism have been rejected. The courts have said it raises too many due process concerns. It raises too many issues. So I do agree with the secretary. Is your argument not at odds with Smith, Henry, Harrison, and now Cedeno? No, Your Honor. Smith, Henry, Harrison, and Cedeno all involved situations where the arbitration clause specifically eliminated a remedy that would be available even in an individual LaRue-style lawsuit. And that is the removal of the trustee or the fiduciary that's breaching. And in each one of those cases, the courts have said that's problematic because this remedy would be available in a federal court action even if it was brought as a single plaintiff action. And Harrison explicitly drops a footnote talking about monetary remedy and saying, yeah, you know, the monetary relief to the plan could be 100% received. Each plan participant bringing their own claim receives the monetary remedy and the plan has 100% relief on the monetary front. He went on to say, however, you still eliminate this injunctive relief. You can't do that because that would be available in an individual federal court action. And that's the problem. So you are hinging it on your injunction argument? Our plan provision does not eliminate any equitable remedy or injunctive remedy that would be available in federal court. So yes, our provision is very different. The only thing that this provision limits is individual monetary remedy. You cannot bring effectively a class action for monetary relief to all of the 20,000 absent participants. That's what this provision says. And yes, that makes this very different than these other cases. I'd go on to point out, if this was truly a mandatory remedy, a mandatory obligation that any plaintiff bringing a Section 50282 claim must bring it effectively as a class action, you're imposing costs and time and other types of obligations on these individual plaintiffs that they may not want to take on. And you'd have to think of it from that perspective as well, that there's a reason why people bring individual actions. It looks like I'm out of time. Thank you. We appreciate the argument that all of you have given and will consider the case carefully. Now we want, before you leave, we should probably discuss whether the panel should probably decide, I'm sure, I feel we do want you probably to brief the newest case. We're going to give you an opportunity to do that. Is there anything you want to say about that specifically? No, I agree that we ought to get your views on the import of the majority and minority opinion in the Second Circuit case. I'm still intrigued by the question of whether there is some reason why we should avoid the effective indication exception and require the district court to address the validity of the amendment of the plan question. So probably safe to say we may or may not ask you to do that in what we send to you following the argument. Is that fair? Do you have anything to add at this point? No, we will send you a letter specifying the time within which you should file that brief at any particular page limit, anything else particular that we want you to know. But you could look for a letter within, you know, a few days. Thank you both. Thank you.